567 So.2d 670 (1990)
Audrey Coogan Hodgins HARE
v.
Norman F. HODGINS.
No. 90-CA-86.
Court of Appeal of Louisiana, Fifth Circuit.
September 13, 1990.
Rehearing Denied October 17, 1990.
*671 Philip R. Riegel, Jr., New Orleans, for plaintiff/appellee.
Floyd J. Reed, New Orleans, for defendant/appellant.
Before KLIEBERT, DUFRESNE, and GOTHARD, JJ.
GOTHARD, Judge.
This case involves the partition of a divorced husband's pension plan benefits. From a judgment in favor of the divorced wife, the husband has taken a suspensive appeal and the divorced wife has answered the appeal.
Norman F. Hodgins and Audrey Coogan were married on June 2, 1951 and were legally separated on November 30, 1976 on grounds of living separate and apart one year. An act of partition and settlement of the community was passed by authentic act on April 4, 1977. The judgment of divorce was rendered on March 29, 1978 and both parties remarried; Mrs. Hare was later widowed. Hodgins retired from Pan American Life Insurance Company, having been employed there since June 1, 1956, and began drawing retirement benefits on March 1, 1988.
Audrey Coogan Hare filed a petition for supplemental partition on March 25, 1988, asserting her community interest in Mr. Hodgins' retirement benefits, which had been omitted in the list of community assets in the earlier partition. After a hearing on August 15, 1989, the court rendered judgment on September 14, 1989, recognizing her claim. Following a rehearing on November 8, 1989, the court rendered judgment on November 16, 1989 in favor of Mrs. Hare, finding that she is entitled to a portion of Mr. Hodgins' retirement benefits as presently received, to be calculated according to the formula set out in Sims v. Sims, 358 So.2d 919 (La.1978). The judgment awarded $27,133.68 in benefits accrued from March 1, 1988 to date of judgment, with legal interest from date of judicial demand until paid. The fees of the court appointed expert were assessed equally to the parties, as were court costs. Mr. Hodgins appealed both judgments suspensively.
Hodgins raises the following issues: 1) whether the claim was barred by prescription; 2) whether the claim was barred by res judicata; and 3) whether Mrs. Hare was entitled to an interest in his retirement benefits.

Prescription
Hodgins argues that Mrs. Hare's claim, filed ten years, eleven months after the execution of partition, had prescribed under LSA-C.C. articles 2369, 3499, and 3491. This argument has no merit as the *672 law is clear that where there is no transfer of rights in the partition document, an asset remains owned in indivision by the parties. Lamartiniere v. Lamartiniere, 520 So.2d 828 (La.App. 3rd Cir.1987). Any party may seek a partition of the asset by petition for supplemental partition. Moreau v. Moreau, 457 So.2d 1285 (La.App. 3rd Cir.1984); Rollison v. Rollison, 541 So.2d 375 (La.App. 2nd Cir.1989).
In his reply brief, counsel for Hodgins contends that Mrs. Hare's reliance on Rasbury v. Baudier, 370 So.2d 659, 660 (La. App. 4th Cir.1979), is misplaced. In that case the court states that an action for partition "is never subject to an exception of liberative prescription; C.C. 1304." He points out that article 1304 appears in the section of the Civil Code entitled "Of Successions" and does not apply to partition of community assets in a separation or divorce. No less an authority than Leonard Oppenheim disagrees. In Successions and Donations, § 91, at 173, 10 Louisiana Civil Law Treatise (1973), Oppenheim states:
Under Louisiana law, no one can be compelled to hold property with another and any co-owner generally has the right to demand the division of the thing held in common by the action of partition. Although the Civil Code articles on partition are found in Title 1 of Book III of the Civil Code which deals with succession, they apply to all partitions where property is held in common regardless of the source of the title....
Accordingly, we hold that Mrs. Hare's claim has not prescribed.

Res Judicata
Hodgins maintains that Mrs. Hare's claim is barred by transaction and compromise and is res judicata. He argues that the partition compromised and settled all claims, including the pension. Further, if any ambiguity in the agreement exists it is to be construed against Mrs. Hare, whose attorney prepared the document.
Hodgins refers us to Chrisman v. Chrisman, 487 So.2d 140 (La.App. 4th Cir.1986), in which the court held that the partition contained a blanket waiver of rights against the community, which barred the wife's later claim against the community for a share of her ex-husband's retirement. In reviewing the Hodgins document herein, however, we find no specific waiver language. It does contain standard clauses indicating the parties' intent to settle all claims, "that they have declared, to the best of their knowledge and information, all assets affecting the composition and value of the aforesaid community of assets and gains," and "that there are no other assets of the community." In Rollison v. Rollison, supra, it was held that similar wording in the partition document did not constitute a waiver and the ex-wife could assert her interest in the pension by supplemental partition.
Hodgins' next argument is that the pension benefits, although not listed, were taken into account during the negotiations prior to the partition. Mrs. Hare denied having learned beforehand of the pension from Mr. Hodgins, from company acquaintances, or from her own attorney. Hodgins testified she was fully aware that he would receive a pension:
Q. Did you everdid you make her aware of the fact that you had a pension benefit coming to you?
A. That was well known, yes.
Q. Well known by whom?
A. Anybody that worked for Pan American or associated with Pan American.
Q. But what about your wife, Mrs. Hare?
A. I'd say yes.
Mrs. Hare introduced into evidence a letter from Hodgins' former attorney to her attorney, dated August 30, 1976, making an offer of settlement of $37,000, allegedly half the net estate. Mr. Hodgins acknowledged that the handwritten schedule of community assets and liabilities attached to the letter had been written by himself. The pension plan does not appear on the schedule, and our review of the partition document indicates that its list of community assets contains all the items in Hodgins' list. In addition, the document provides that the community will reimburse Mrs. Hare $20,000, representing funds inherited *673 by her. Using the figures in the partition schedule, we find that Mrs. Hare's share of the net community was approximately $51,000. As the community was valued at $79,195 (without professional appraisals), it is obvious that she was allotted more than 50% of the value. Hodgins confirmed that this was so in the following testimony:
Q And, during the negotiations for the settlement or division of the community property, was the pension plan discussed?
A Yes.
Q And in the division of community property did you give to your wife or did you attempt to give to Mrs. Hare a sum in excess of fifty percent of the community?
A Yes.
Q And, why did you do that?
A Well, that was to offset whatever might be involvedemployee benefits, pension, they also talked about aan additional separate property sum, etc. So, an attorney advised and we just lumped everything together and made a settlement at that point.
Neither the attorney who represented Mr. Hodgins during the negotiations nor Mrs. Hare's attorney, who has represented her from the beginning of the separation proceedings and who drafted the partition document, was called to testify. Consequently, even though Mr. Hodgins' assertion may be valid, the issue of whether the pension was taken into account in the partition is a question of fact dependent on the testimony of the two adversaries. As the trial judge is in a better position than the appellate court to assess witnesses' credibility, the court of appeal may not reverse his finding of fact in the absence of clear error. Rosell v. ESCO, 549 So.2d 840 (La. 1989). We therefore affirm the court's determination that Mrs. Hare is entitled to her community share of her ex-husband's pension.

Ex-wife's entitlement to benefits accrued after divorce
The appellant asserts that if Mrs. Hare is adjudged to have a valid claim, the Sims v. Sims formula for calculating her community portion is unfair. He complains that the formula gives undeserved credit to the community for the increased benefits he earned after the divorce through his initiative and industry.
The record reveals that Pan American's pension plan is a defined benefit plan, accrued annually at a set percentage of compensation, and funded entirely by the company. At the time of the dissolution of the community, the benefit was calculated on the basis of the average annual compensation for the last five years of employment, but when Hodgins retired, the plan had been amended to base the benefit on the last three years. The benefit was limited to a maximum of 60% of the five-year or three-year average compensation.
In Sims v. Sims, supra, the Supreme Court affirmed a divorced wife's right to receive benefits from her husband's government pension plan in the proportion that they were attributable to the husband's employment during the community. The husband was still employed but she was entitled to have her interest recognized prior to the funds becoming payable to the employee. The Sims formula is:
Portion of pension attributable
to creditable service during
existence of community × ½ × annuity (or
------------------------------- lump-sum payment)
Pension attributable to total
creditable service
We find the Sims formula to be inappropriate in the present case. We hold the wife to be entitled to one-half of the retirement fund value as of the date of the dissolution of the community, plus legal interest until paid. The Sims formula is applicable only to similar fact situations and should not be universally applied to all pension plan benefits. Sims involved a federal retirement plan which was contributory; the employee and the government each contributed to the plan. Further, at the time the community was dissolved by divorce in 1975, the husband had 19 years *674 and 5 months of creditable service and would become eligible to retire and receive immediate retirement benefits when he became 50 years of age on September 23, 1976. The dispute in Sims was what interest the wife acquired in the retirement plan of the husband which they agreed was a community asset.
In the present case the husband's pension plan is funded entirely by the company. Further, the act of partition was passed on April 4, 1977, and the retirement plan was omitted from the partition completely. The husband retired March 1, 1988, almost 13 years after the dissolution of the community.
Although the trial judge felt that the Sims formula should be applied, we disagree. Instead, we would apply a formula based on Hodgins' accrued benefit as of the dissolution of the community. Hodgins' expert witness was a vice-president of Pan American, an actuary in charge of employee benefits. He based his calculations on the dissolution of the community, when the petition for separation was filed on October 20, 1975. Had Hodgins terminated his employment in 1975, his lump sum payment would have equaled $30,438, and Mrs. Hare's share would have been $15,219. Accordingly, we amend the trial court's award to reflect the expert's calculation.

Appellee's answer to appeal
Mrs. Hare opposes the court's disallowing calculation of her share of the retirement benefits without regard to Hodgins' selection of the joint and survivor annuity option. As we have amended to award a lump sum payment instead of applying the Sims formula, we do not consider the issue raised by the appellee.

CONCLUSION
Mrs. Hare is adjudged to have a valid claim against Mr. Hodgins' pension plan. We amend the judgment appealed from to award her the sum of $15,219, with legal interest from October 20, 1975 (date of dissolution of community) until paid. In all other aspects the judgment is affirmed. Costs of this appeal are to be paid equally by both parties.
AMENDED AND AS AMENDED, AFFIRMED.