390 So.2d 250 (1980)
Gloria Brooks KING, Plaintiff-Appellant,
v.
Earl James KING, Defendant-Appellee.
No. 7724.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
Writ Refused January 16, 1981.
*251 J. Marc Lampert, Alexandria, for plaintiff-appellant.
James D. Davis, of Davis & Murchison, Alexandria, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
DOMENGEAUX, Judge.
After obtaining a legal separation, but prior to their divorce, Earl James King and Gloria Brooks King executed a community settlement contract. As part of that covenant, Mr. King agreed to pay his wife "the sum of TWO HUNDRED AND NO/100 ($200.00) DOLLARS per month as alimony, both pendente lite and permanent, until such time as she remarries." The contract was signed on May 16, 1975, the day after the parties were granted a legal separation. In that separation judgment, the District Court ordered Mr. King to pay alimony pendente lite of $200.00 per month to Mrs. King.
On September 16, 1976, Mr. King sued for divorce. In his petition he asked that the $200.00 per month alimony award to Mrs. King be maintained "until her remarriage." Judgment of absolute divorce was rendered and signed October 28, 1976. Therein the court maintained the alimony award, but only "until further orders of this Court."
A year later, on December 1, 1977, Mr. King filed a motion for a rule to show cause why the alimony award of $200.00 per month should not be terminated. After *252 hearing the evidence, and on February 24, 1978, the court terminated the alimony award on the basis that alimony was no longer necessary. The court found that Mrs. King was gainfully employed and was capable of supporting herself. However, she had not yet remarried.
Less than a month after alimony was terminated (March 22) Mrs. King filed suit for breach of contract. She alleged that Mr. King owed her $6,800.00 under the community property settlement which had been executed 34 months before Mrs. King's suit was filed. After trial, the court dismissed Mrs. King's suit. The court relied upon the following passage from Ward v. Ward, 339 So.2d 839 (La. 1976), to support its decision:
"Under Article 1790 of the Louisiana Civil Code, a husband and wife are incapable of contracting with each other subject to limited exceptions. See LSA-C.C. Arts. 1790, 2446. The exceptions do not include a contract for the settlement of alimony rights." 339 So.2d at 841.
Thus, the trial court held the alimony clause in the community property settlement contract to be null. In supplemental reasons for judgment the court held the entire contract to be null because it found the alimony clause was a major cause, or consideration, for the making of the contract.[1] In addition to the alimony, Mrs. King was to receive, under the contract, $2,000.00 in cash and a living room suite. In exchange, she surrendered all her rights and interest in the house and lot at 406 Pine Cone Circle, Haughton, Bossier Parish, Louisiana, and her interest in the Star Chemical Company. The court noted that once the alimony clause is voided there is no evidence that what Mrs. King gave up is adequately compensated for by what she received, because no evidence was adduced to establish the value of what Mr. King received.
Mrs. King appealed from the trial court's judgment. She argues that the court erred in determining (1) that the contract provision relates to payment of alimony rather than payment of a purchase price adequately supported by recited consideration, and (2) that Civil Code Article 1790 prohibits interspousal contracts which affect alimony rights.
We cannot sustain Mrs. King's first contention. With exceptional clarity the contract provided for Mr. King to pay Mrs. King $200.00 per month "as alimony, both pendente lite and permanent." To suggest the payment was intended as anything but alimony is to deny the very clear language of the contract. Nothing in the record supports Mrs. King's argument that Mr. King intended to pay her $400.00 per month-$200.00 under the contract and $200.00 under order of the court. In fact, the record supports the opposite view that both parties intended that there be but one payment of $200.00 every month.
In the 33 month interval between the judgment of separation and the order of the court terminating alimony, Mr. King made only one payment per month. That payment totalled $200.00. Not until after the court terminated alimony did Mrs. King first argue that the parties intended for Mrs. King to receive $400.00 per month. Never before had she attempted to enforce this clause of the contract.[2]
*253 We find that the inclusion of the alimony clause in the contract indicated an intent to endorse the separation judgment signed one day earlier. As further evidence of this intent we note that Mr. King stated, in paragraph 3 of his petition for divorce:
"In the separation judgment, petitioner was ordered to pay defendant, Gloria Brooks King, the sum of TWO HUNDRED AND 00/100 ($200.00) DOLLARS per month and petitioner has no objection to continuing the payment." (Emphasis added).
In the same petition, Mr. King prayed "that the defendant be granted the sum of TWO HUNDRED AND 00/100 ($200.00) DOLLARS per month alimony until her remarriage." (Emphasis added). The emphasized portion of the prayer is identical to the language used in the contract. This is additional evidence that the two documents-the contract and the court order-referred to only one payment.
We agree with the trial court that the contractual provision actually referred to alimony rather than installment payments toward the fulfillment of an agreed upon purchase price. We also conclude, on the basis of the record, that the contract provision was merely an adoption of the court order to the extent that alimony was paid pursuant to the court order. However, we are left with the question of whether the parties intended for alimony to continue until Mrs. King remarried rather than to terminate upon order of the court. If such was their intent, was the provision void as found by the trial court? The answer to this question addresses itself, eventually, to Mrs. King's second contention, that Article 1790 does not prohibit interspousal contracts which affect alimony rights.
The trial court invalidated the alimony provision of the settlement, relying on Ward v. Ward, supra, and Articles 1790 and 2446 of the Civil Code. We find that the court erred in doing so.
In Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967), the Supreme Court found that the wife's error in waiving her right to alimony as part of the consideration for a partition agreement involving a piece of real property entered into after legal separation was only a "relative nullity." Thus, after her incapacity had ceased (i. e. upon divorce) she was free to ratify and confirm the agreement. Nine years later, Ward held that an agreement waiving alimony and child support made after legal separation but before divorce did not fall within the exceptions outlined in La. C.C. Art. 2446 and was a nullity. Unfortunately, Ward did not indicate whether it was following the Nelson v. Walker holding that the agreement was a relative nullity based solely upon the incapacity of the parties to contract with one another during their marriage, or was an absolute nullity because of public policy considerations, thereby impliedly overruling Nelson.
This area of the law was further complicated by the more recent Supreme Court decision of Holliday v. Holliday, 358 So.2d 618 (La. 1978). There the Court held that the ante-nuptial waiver of alimony pendente lite is an absolute nullity because such a waiver is against public policy. The Court might have overruled Nelson's partial holding that a wife's waiver of alimony pendente lite is only a relative nullity. However, it did not expressly do so. Furthermore, the Court in Holliday purposely did not decide whether one can waive permanent alimony in an ante-nuptial agreement, which is closer to the issue under consideration.[3]
In Monk v. Monk, 376 So.2d 552 (La.App. 3rd Cir. 1979), this Court decided a case very similar to the one under review. The Monks executed a post-separation, pre-divorce contract in which, for recited consideration, Mrs. Monk relinquished any alimony *254 rights she may have had. After comparing and distinguishing the Nelson and Holliday holdings, we concluded that Mrs. Monk's waiver was only a relative nullity which she later ratified.[4] Thus, Mrs. Monk effectively waived permanent alimony in the post-separation agreement when she ratified the agreement after divorce. We found Nelson controlling, rather than Holliday, because of the fundamental difference between alimony pendente lite wherein the parties are still married and are obliged to support one another, and alimony after divorce which has been likened to a pension by the Supreme Court (see Ward v. Ward, 339 So.2d at 842).
The case before us does not present precisely the same issue dealt with in Monk. Mrs. King did not waive her alimony rights. Yet the contract the Kings entered into purported to affect alimony rights: Not only did the parties seek to ratify the trial court's alimony award; they sought to contractually extend it until such time as Mrs. King remarried, regardless of whether she needed it or not. Thus did Mr. King attempt to bargain away his right, under Civil Code Article 160, to have post-divorce alimony terminated when it was no longer necessary. Since such a bargain is only relatively null, under Nelson v. Walker, Mr. and Mrs. King were free to ratify their agreement after divorce. The record establishes that, pursuant to the contract, Mrs. King received the $2,000.00 cash, the living room suite, and $200.00 per month for 33 months. Mr. King received the house, lot, and all furnishings (other than the living room suite), Mrs. King's share of Star Chemical Company, and paid her $200.00 per month for 33 months. After the divorce became final neither attempted to abrogate the contract on the basis of nullity. Instead, they both accepted the effects and obligations of the contract until Mr. King refused to pay any more alimony after the court terminated the award. But by then the contract had been ratified.
To recapitulate, we find that the parties did not intend for Mrs. King to receive $400.00 per month as alimony. The parties intended to signify their approval of the alimony judgment by including it in the community property settlement. However, they intended to affect their respective alimony rights and obligations by providing for the payment of alimony until Mrs. King's remarriage rather than until further orders of the court. They ratified their relatively null contract by adhering to its provisions after divorce. Therefore, Mr. King owes his former wife $200.00 per month until Mrs. King's remarriage, whenever that was or will be.
For the above reasons, the judgment of the District Court which held the community property settlement contract herein to be null and void is hereby reversed. Judgment is rendered in favor of Gloria Brooks King, plaintiff, and against Earl James King, defendant, in the amount of $200.00 per month from February 24, 1978, until Mrs. King's remarriage. Costs are divided equally between plaintiff and defendant.
REVERSED AND RENDERED.
NOTES
[1] Here the court relied upon Civil Code Articles 1893, 1896, and 1897. Those Articles read:

"Art. 1893 An obligation without a cause, or with a false or unlawful cause, can have no effect.
Art. 1896 By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.
Art. 1897 The contract is also considered as being without cause when the consideration for making it was something which, in the contemplation of the parties, was thereafter expected to exist or take place, and which did not take place or exist. A gift in consideration of a future marriage is void by this rule, if the marriage do not take place."
[2] In November of 1977 Mrs. King sued Mr. King "to make back due alimony" of only three months ($600.00) executory. Yet she never sued under the contract until three years later, after alimony was discontinued. This inconsistency only bolsters our belief that neither of the parties anticipated or intended for two $200.00 payments to be made each month.
[3] See footnote 6, 358 So.2d at 620. For a thoughtful discussion of Holliday v. Holliday, and its possible ramifications, see Note at 39 La.L.Rev. 1161 (1979).
[4] In Monk, this Court gratuitously noted that such an agreement would not even be a relative nullity since the prohibition against spouses contracting with one another during marriage had been lifted by Act No. 627 of the 1978 Regular Session of the Louisiana Legislature, which had retroactive effect under Section 9 of that Act. Act 627 of 1978 was repealed in its entirety by Act No. 709 of the 1979 Regular Session of the Louisiana Legislature. The retroactivity provision was not re-enacted. Thus, the dicta in Monk may no longer be accurate.