500 So.2d 798 (1986)
Dr. Joseph Carl BONCK, Sr.
v.
Mary Lynn BONCK.
No. CA 85 1364.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Writ Denied February 13, 1987.
*799 Chester Hugh Boyd, Baton Rouge, for plaintiff-in rule appellant Dr. Joseph Carl Bonck, Sr.
James D. Thomas, II, Baton Rouge, for defendant-appellee Mary Lynn Bonck.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This is a devolutive appeal from a trial court dismissal of a husband's rule to terminate or reduce permanent alimony.

FACTS
Dr. Joseph C. Bonck, Sr. and Mary Lynn Locascio Bonck were married on August 2, 1953. Three children were born of this marriage.
On January 4, 1973, Dr. Bonck filed a suit for a legal separation. Mrs. Bonck answered and filed a reconventional demand. Judgment was signed in this suit on March 16, 1973, which judgment provided as follows: (1) Dr. Bonck's main demand was dismissed; (2) judgment was rendered in favor of Mrs. Bonck on the reconventional demand decreeing a separation; (3) the permanent custody of the three children was granted to Mrs. Bonck, subject to reasonable visitation by Dr. Bonck; (4) Dr. Bonck was ordered to pay $750 per month alimony pendente lite and $750 per month child support; (5) Dr. Bonck was to pay for the medical and dental needs of the children; (6) Mrs. Bonck and the children would have the use of the matrimonial domicile pending a community property settlement; and (7) Dr. Bonck would repair and pay the mortgage note for the matrimonial domicile.
On May 17, 1974, Mrs. Bonck filed a petition for a divorce. On June 18, 1974, a judgment of divorce was signed. The terms of this judgment were the same as the judgment of separation, except that this judgment did not require Dr. Bonck to repair and pay the mortgage note for the matrimonial domicile.
On October 23, 1974, Dr. and Mrs. Bonck entered into a community property settlement agreement. Mrs. Bonck received the matrimonial domicile, her car and the household furniture and assumed responsibility for the mortgage on the matrimonial domicile. Dr. Bonck received his car, the savings and checking accounts in his name, 10% stock in the Baker Manor Nursing Home, the furniture at his clinic, one-third of the common stock of the B.F. & D. Corporation and Baker Theatre, and a tract of land located in Baker and assumed responsibility for the mortgage on that tract of land. On this same date, the parties also executed a document entitled Community Property Settlement Counter Letter. This document provided that Dr. Bonck would maintain the premiums on five life insurance policies totaling $142,000 and *800 that Mrs. Bonck was entitled to her interest in the cash surrender value of these policies as of April 1, 1973. This counter letter also provided as follows:
As a further consideration for the community property settlement agreement, Joseph C. Bonck, Sr., hereby agrees to raise the amount of alimony due Mary Lynn Bonck from $750.00 per month to $1,250.00 per month, said alimony to terminate on her remarriage, and does hereby agree to stipulate that the judgment of the Family Court for the Parish of East Baton Rouge may be amended in accordance with this stipulation commencing November 1, 1974.
Also on this date, counsel for the parties signed a stipulation that the June 18, 1974 judgment could be amended to increase Mrs. Bonck's permanent alimony to $1,250 per month, effective November 1, 1974.
On December 6, 1974, the June 18, 1974 judgment was amended to provide that Mrs. Bonck's permanent alimony would be $1,250 per month commencing November 5, 1974. This amended judgment did not provide that Mrs. Bonck's alimony would terminate on her remarriage.
On February 27, 1978, Mrs. Bonck gave written authorization to Dr. Bonck to cash in the five insurance policies and agreed that her share of the proceeds was $7,935.70.
Dr. Bonck complied with the terms of the judgments and agreements. This rule was filed on June 28, 1985. Mrs. Bonck has not remarried.

VALIDITY OF PERMANENT ALIMONY AGREEMENT

(Assignment of Error 2)
Dr. Bonck contends the trial court committed error by enforcing the permanent alimony agreement as written and not allowing a termination or reduction. Specifically, he contends that since the parties agreed to reduce the agreement to judgment, and since a judgment granting permanent alimony can always be changed with a change of circumstances, the remarriage limitation of the agreement is not controlling.
Divorced spouses may validly contract with each other for permanent alimony. Klein v. Klein, 485 So.2d 970 (La.App. 5th Cir.1986), writ denied, 489 So.2d 921 (La.1986); Beringer v. Beringer, 415 So.2d 429 (La.App. 1st Cir.1982); King v. King, 390 So.2d 250 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 884 (La.1981). Such agreements are enforceable according to their own terms and need not be incorporated into a judgment. Spencer v. Spencer, 472 So.2d 302 (La.App. 3rd Cir.1985). The reasons for such an agreement are set forth in Jones v. Jones, 459 So.2d 1200, 1204 (La.App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985) as follows:
The record supports our conclusion that the agreement states a bargainedfor arrangement advantageous to both parties. Mrs. Jones is assured of a set sum of monthly payments, regardless of any change in circumstances which ordinarily reduce or terminate those payments (other than remarriage). Should her income increase or needs decrease, she will not suffer a decrease in payment. On the other hand, Mr. Jones is assured that he will never have to face an increase, in the event of an unfortunate happenstance occurring to Mrs. Jones, such as illness or unemployment. In short, each party received benefits from the arrangement. Such does not change the character of the payments as alimony.
The subsequent judgment amendment herein does not affect the alimony agreement between the parties. The counter letter provides the judgment "may be amended in accordance with this stipulation." [Emphasis added.] The word "may" means the amendment is discretionary. If the amendment is discretionary (and thus not necessary or mandatory), the agreement is self-executing. Further, even if the judgment is amended, it must be "in accordance with this stipulation." *801 This language clearly makes the judgment subservient to the agreement.
In King, after obtaining a legal separation, the parties entered into a community settlement contract which required the husband, among other things, to pay the wife $200 per month in alimony, pendente lite and permanent, until such time as she remarried. The husband subsequently obtained a judgment of divorce which granted $200 per month alimony until further orders of the court. A year later, the husband filed a rule and successfully terminated alimony on the basis it was no longer necessary. The wife then filed suit for breach of the community settlement contract alleging she was entitled to her alimony payments. The trial court dismissed the suit, but the court of appeal reversed with the following observations:
Mrs. King did not waive her alimony rights. Yet the contract the Kings entered into purported to affect alimony rights: Not only did the parties seek to ratify the trial court's alimony award; they sought to contractually extend it until such time as Mrs. King remarried, regardless of whether she needed it or not. Thus did Mr. King attempt to bargain away his right, under Civil Code Article 160, to have post-divorce alimony terminated when it was no longer necessary.
* * * * * *
The parties intended to signify their approval of the alimony judgment by including it in the community property settlement. However, they intended to affect their respective alimony rights and obligations by providing for the payment of alimony until Mrs. King's remarriage rather than until further orders of the court.... Therefore, Mr. King owes his former wife $200.00 per month until Mrs. King's remarriage, whenever that was or will be.
King, 390 So.2d at 254.
We find this rationale persuasive.
This assignment of error is without merit.

ESTOPPEL  PAROL EVIDENCE

(Assignment of Error 1)
Dr. Bonck contends the "trial court erred in allowing estoppel to prevent appellant from showing a change in circumstances, allowing consideration of a reduction or termination of alimony." Specifically, it is asserted that detrimental reliance is an essential element of estoppel, and such has not been shown by Mrs. Bonck.
At the commencement of the trial of Dr. Bonck's rule to terminate or reduce permanent alimony, counsel for Mrs. Bonck objected to the introduction of any evidence which could vary the terms of the counter letter on the grounds of estoppel and the parol evidence rule. Mrs. Bonck specifically asserted that in the counter letter Dr. Bonck contracted away his right to terminate or reduce alimony except by her remarriage. Dr. Bonck argued the counter letter was not controlling because the terms thereof were reduced to judgment, and he was attempting to modify the judgment (not the counter letter) based on a change of circumstances. Dr. Bonck also asserted the contract to provide for permanent alimony was contra bones mores. The trial court sustained Mrs. Bonck's objection, but Dr. Bonck was allowed to tender his evidence in a proffer.
Contracts have the effect of law on the parties thereto and must be performed in good faith. La.C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.C.C. art. 2046. In Carter's Insurance Agency, Inc. v. Franklin, 428 So.2d 808, 813 (La.App. 1st Cir.1983), appears the following:
The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the *802 instrument and cannot be explained or contradicted by parol evidence.... In such a case, a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained, or that he did not understand it.
The pertinent provision of the counter letter is clear, explicit and leads to no absurd consequences. This provision is the law of the case between the parties, and extrinsic (parol) evidence was properly excluded on the issue of its proper interpretation. The ruling of the trial court was correct for the above reasons, and, thus, it is unnecessary for us to decide whether estoppel is applicable.
This assignment of error is without merit.

APPLICABILITY OF LA.C.C. ART. 232

(Assignment of Error 3)
Dr. Bonck contends the trial court erred in not considering the provisions of La.C.C. art. 232, which provides as follows:
When the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted.
La.C.C. art. 232 does not apply to this case. Dr. Bonck has validly contracted away his right to have permanent alimony terminated or reduced because of his inability to give it and/or Mrs. Bonck's lack of need. (Mrs. Bonck has contracted away her right to seek an increase, even though her needs and/or Dr. Bonck's ability to pay increased.) Pursuant to the contract between the parties, permanent alimony can only be terminated on Mrs. Bonck's remarriage.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.