STOKER, Judge.
Harold H. Stream, III, contractually agreed to pay permanent alimony to Lynn René Anderson Stream in the amount of $3500 per month until she dies or remarries. This appeal presents two issues: may Harold seek a judgment terminating the alimony, or in the alternative, may he seek a reduction of the alimony. Harold bases his right to seek termination of alimony on allegations that Lynn breached the contract as will be explained later. Harold bases his alternative claim for the right to seek reduction on the absence of any provision in the alimony agreement respecting reduction.
These two issues come up to us in separate proceedings, but this opinion will address both issues. We will render separate opinions in each proceeding. We hold that Harold is bound by the contract and therefore is not entitled to terminate or reduce the alimony.
FACTS
On April 7, 1982, a judgment of divorce was rendered in favor of Lynn Anderson Stream against Harold H. Stream, III. The judgment awarded alimony in the sum of $3500 per month. On April 1, 1982, the parties entered into a “Memorandum of Understanding” which stated that Harold was to pay Lynn permanent alimony of $3500 per month, beginning January 1, 1984. The agreement further stated that this obligation to make alimony payments “shall be terminated upon the death or remarriage of” Lynn Anderson Stream. On April 16,1982, the parties entered into a community property settlement agreement. On that same date, as part of the consideration for the community property settlement agreement, both parties entered into another agreement which they called a “Counter Letter”. The Counter Letter stated that commencing January 1, 1984, Mr. Stream shall pay his alimony in the sum of $3500 per month and this payment shall terminate only on the death or remarriage of Lynn Anderson Stream. Both of these agreements also covered child support, which allowed for reduction or increase depending on the needs of the children.
On June 1, 1990, Harold filed a rule for termination of alimony alleging that Lynn had substantial income, means and assets, and was not in need of alimony. In response to that rule, Lynn moved for summary judgment based on the fact that the consensual alimony agreement entered into between Harold and Lynn provided that his alimony payments would not terminate until she died or remarried. Harold thereafter filed a rule to reduce alimony. Lynn once again moved for summary judgment.
On October 31, 1991, the trial court granted Lynn’s motion for summary judgment dismissing Harold’s rule for termination of alimony. This judgment has been appealed by Harold. The trial court denied Lynn’s motion as to Harold’s rule for reduction of alimony. Lynn seeks supervisory relief from this ruling. The appeal and the writ for supervisory relief have been consolidated and are both before us now.[1]
OPINION
It will be helpful in understanding Harold Stream’s position, particularly with reference to termination of alimony, to state his underlying theory or approach. It is breach of contract. Harold postulates that he agreed to the alimony payments set forth in the contract agreements to protect the best interests of the children of the marriage. He urges that he agreed “so that Anderson [Lynn] could continue to provide a safe, comfortable and nurturing environment in which their children could thrive.” According to Harold, this was the intent of the parties in confecting their *140 agreement embodied in the documents. Harold urges further that events came to light in 1990 which indicate that Lynn failed to provide a safe and nurturing environment for the children. At trial Harold attempted to introduce evidence to show that Lynn had breached the agreement by failing to fulfill her part of the agreement through actually maintaining an unwholesome home environment and neglecting the children. The trial court did not allow introduction of evidence in support of this contention. Before this court, Harold argues that, if allowed to do so, he can prove the intent of the contracting parties and Lynn’s breach of her contractual duties.
Termination of Alimony
Harold first contends on appeal that a summary judgment is inappropriate since there is an issue as to the intent of the parties to the contract. However, he has not alleged a vice of consent, simulation or modification by a subsequent oral agreement. See LSA-C.C. art. 1848. The terms of the contract are clear and lead to no absurd consequences. Therefore, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 1848 and art. 2046. Favret v. Favret, 527 So.2d 463 (La.App. 5th Cir.), writ denied, 532 So.2d 114 (La.1988); Romero v. Romero, 509 So.2d 681 (La.App. 3d Cir.), writ not cons.’d, 512 So.2d 427 (La.1987); Bonck v. Bonck, 500 So.2d 798 (La.App. 1st Cir. 1986), writ denied, 501 So.2d 774 (La.1987).
Next, Harold argues that Lynn breached her contractual obligation to provide the children' with a safe home and, therefore, he should not be held to the alimony agreement in the “Memorandum of Understanding” and the “Counter Letter.” These agreements provided for custody, visitation rights, child support, alimony and the community partition. To hold that a breach of one part of these agreements would void all of the other parts does not follow. The various provisions in the parties’ agreements are simply not correlative or interdependent. Moreover, the duty of a custodial parent to provide a safe home is not contractual; it is a legal and moral duty. LSA-C.C. art. 227. Issues of child custody and child support are not incidental to an action on permanent alimony under LSA-C.C. art. 112. Determinations as to parental unfitness and change of custody are not a proper defense to payment of permanent alimony. Permanent alimony arises from past marital obligations imposed by LSA-C.C. art. 112. Oberfell v. Oberfell, 516 So.2d 424 (La.App. 1st Cir.1987). Child custody and support arise from parental obligations. LSA-C.C. art. 227. Alimony and child support are separate and distinct causes of action.
Finally, we point out that the contract between the parties does not state that the permanent alimony is paid in consideration for Lynn being a good mother and providing a good home environment for the children. Rather, Lynn was paid an entirely separate amount, stipulated in the contract, for child support.
Reduction of Alimony
Harold relies on the case of Oster v. Oster, 563 So.2d 490 (La.App. 4th Cir.1990), writ denied, 568 So.2d 1059 (La.1990), for the proposition that he has the right to seek reduction of the alimony because the contract does not contain an explicit waiver of that right. In Oster, the issue was whether the payments were intended to be alimony or an annuity paid as consideration for the relinquishment of certain community assets. The trial court found the payments were alimony which, pursuant to the agreement, were not subject to reduction. The appellate court stated that it was unable to determine whether the payments were intended as an annuity or as alimony and remanded the case for further proceedings. Under this holding the court implied that if the payments are alimony, it would be subject to reduction since there was no express waiver of the right to seek a reduction in the agreement. The court cited no authority for this statement, and we decline to follow this implied ruling.
Other jurisprudence has uniformly interpreted permanent alimony agreements, containing such language as “such sum to be paid until the death or remarriage of", to not be subject to reduction or termination under LSA-C.C. art. 232. The ratio *141 nale for that interpretation has been that the obligor bargained away his right under LSA-C.C. art. 232 to have post-divorce alimony reduced or terminated, while the obli-gee bargained away her right to have it increased. The obligor is assured that he will never have to face an increase in the event of an unfortunate happenstance occurring to the obligee, such as illness or unemployment. The obligee, on the other hand, is assured of a set sum of monthly payments, regardless of any change in circumstances which ordinarily reduce or ter-, minate those payments (other than remarriage). Favret v. Favret, supra; Romero v. Romero, supra; Bonck v. Bonck, supra; Spencer v. Spencer, 472 So.2d 302 (La.App. 3d Cir.1985); Jones v. Jones, 459 So.2d 1200 (La.App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985); King v. King, 390 So.2d 250 (La.App. 3d Cir.1980), writ ref.’d, 396 So.2d 884 (La.1981).
In the case before us, the parties contracted for monthly alimony payments of $3500 per month until Lynn dies or remarries. We see no ambiguity in this language or distinction from the prior jurisprudence.
CONCLUSION
Therefore, we hold that the trial court correctly granted Lynn’s motion to dismiss Harold’s rule to terminate the alimony. We further hold that the trial court erred in denying Lynn’s motion to dismiss Harold’s rule to reduce alimony. Judgment to that effect is handed down this date in a separate opinion by this court in Stream v. Stream, 614 So.2d 141 (La.App. 3d Cir. 1993), numbered on our docket as W92-30.
DISPOSITION
The judgment of the trial court dismissing the rule to terminate alimony is affirmed. Costs of this appeal are assessed to defendant-appellant Harold H. Stream, III.
AFFIRMED.

. Lynn’s action for supervisory relief consolidated with this case is entitled Stream v. Stream, 614 So.2d 141, No. W92-30 on the docket of this court in which we render a separate judgment this date.