803 So.2d 963 (2001)
Lula Mae JENNINGS
v.
Johnny E. TURNER, Jr.
No. 2001-C-0631.
Supreme Court of Louisiana.
November 28, 2001.
As Clarified on Grant of Rehearing January 25, 2002.
Joseph P. Williams, Jr., Metairie, Counsel for Applicant.
John M. Blanchard, Johnny E. Turner, Jr., Theon A. Wilson, New Orleans, Counsel for Respondent.
VICTORY, J.[*]
Recently, this Court addressed the very issue presented in this case, i.e., *964 whether general divestiture language in a community property settlement agreement purporting to distribute all community assets precludes a non-employee spouse from subsequently asserting his or her rights in the employee spouse's pension.
In Robinson v. Robinson, this Court held:
Louisiana jurisprudence is clear; general divestiture language does not necessarily divest the non-employee spouse of his or her right in the employee spouse's pension. When the agreement does not expressly address the employee spouse's pension, the issue of whether the agreement divests the non-employee spouse of any community property rights in the pension depends on the intent of the parties.
99-3097 (La.1/18/01), 778 So.2d 1105, 1121. The issue of whether a pension was considered in property settlement discussions is a question of fact. Id. at 1119.
In this case, the parties executed a "Community Property Partition" (the "Agreement") on October 25, 1990, in order to "voluntarily partition the community of acquets and gains which existed between them up to the date of this agreement." In this Agreement, Ms. Jennings transferred her interest in the following property to Mr. Turner: (1) the former family home located at 4418 Knight Drive in New Orleans, Louisiana; (2) "all personal articles and items, jewelry, clothing and other personal effects belongings to Husband;" (3) all appliances and household furnishings located at 4418 Knight Drive; (4) two automobiles. In consideration of this, Mr. Turner transferred to Ms. Jennings: (1) $30,000.00; (2) "all personal articles and items, jewelry, clothing and other personal effects which belong to Wife;" and (3) all appliances and household furniture in Ms. Jennings' possession. In the Agreement, the parties acknowledged that they had each received an equal share of the community property which was acquired during their marriage, and released each other from any further accounting.
On November 22, 1995, Ms. Jennings filed a "Petition for Partition of Community Property," claiming her rights to Mr. Turner's pension, which he began to earn in 1982. Mr. Turner filed a motion for summary judgment, claiming that his pension was included in the Agreement, and, thus, Ms. Jennings was now precluded from seeking to partition his pension benefits. Along with his motion for summary judgment, he presented an affidavit of Ms. Jennings' former attorney, which stated that the attorney had gone over the Agreement with Ms. Jennings, and Ms. Jennings knowingly accepted all the terms of the Agreement as complete and final and waived any further accounting relative to any community property which had not been specifically listed. The trial court denied the motion.
At trial, Ms. Jennings testified that at the time she signed the agreement, she was not aware that Mr. Turner had a pension plan, but that sometime shortly thereafter, her attorney told her that "You know, at 65 you can go in and draw his pension." The only other witness to testify at trial was a retirement specialist who testified regarding Mr. Turner's participation in his pension plan.
The trial court entered judgment in favor of Mr. Turner, finding that Ms. Jennings was not entitled to partition the pension benefits, as the Agreement was prepared by Ms. Jennings' attorney, and the parties released each other from any further accounting and acknowledged that they had received an equal share of the *965 community property acquired during the marriage.[1] The court of appeal affirmed, determining that "the language of the agreement is broad enough under any reasonable reading to demonstrate an intention to effect a partition of the entire community." Jennings v. Turner, 00-0762 (La.App. 4 Cir. 2/7/01), 786 So.2d 982 (unpublished opinion).
Under our holding in Robinson v. Robinson, general divestiture language does not necessarily divest the non-employee spouse of his or her right in the employee spouse's pension and when, as here, the agreement does not expressly address the employee spouse's pension, the issue of whether the agreement divests the non-employee spouse of any community property rights in the pension depends on the intent of the parties. Here, there is no language in the Agreement that can be reasonably interpreted as transferring Ms. Jennings' interest in the pension to Mr. Turner. Further, there is no evidence in the record that the parties intended to include the pension benefits in the Agreement. Ms. Jennings testified that she did not even know the pension existed, and Mr. Turner failed to testify.

DECREE
For the reasons stated above, the judgment of the court of appeal is reversed and the matter is remanded to the trial court to partition the pension benefits under the formula enunciated in Sims v. Sims, 358 So.2d 919 (La.1978).
REVERSED AND REMANDED.
TRAYLOR, J., dissents and assigns reasons.
TRAYLOR, J., dissenting.
I agree with the majority's conclusion that the parties' intent regarding the pension must be established when the agreement is silent on the issue. See Robinson, 778 So.2d at 1121. However, I disagree that the evidence before us in the record establishes that the parties did not intend to partition the pension when they signed the agreement in 1990.
At the trial to partition the pension, a representative from the husband's employer, the New Orleans Steamship Association (NOSA) testified regarding the husband's pension fund, the International Longshoremen's Association Pension Fund (ILA). He testified that the pension plan sends out notices any time changes are made to the plan, or when an employee separates service, and that publications are sent notifying participants of their status on benefits in general. The pension fund office mails the information to the participants, and that mailings were sent to participants during the period from 1981 to 1990. On cross-examination, the plaintiff admitted that publications from "the union" came to the house, but that she didn't open them.
Plaintiff further testified that she had no knowledge regarding the longshoreman's union or the fact that they are entitled to pensions. However, as she was leaving her attorney's office after she got her cash settlement of $30,000, her attorney mentioned that she "at 65 you can go in and draw his pension." It seems odd that her *966 attorney would make this offhand remark about a pension when the plaintiff allegedly did not know of the pension, and thus would not be able to inform her attorney about it.
Apparently, the trial court came to the same conclusion. The trial court found that the plaintiff had notice of the pension in 1990, either on the basis of the mailings to the house or on plaintiff's testimony that she found out about it from her attorney. While he used this finding to establish an erroneous legal conclusion based on prescription, the trial court's finding remains a viable finding of fact on the issue of intent. At the very least, if any doubt at all exists regarding the parties intent, the case should be remanded for the trial court to clarify this factual issue. Because the record evidence relied on by the majority fails to establish that parties did not intend to partition the husband's pension, I respectfully dissent.
ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, PARISH OF ORLEANS.
PER CURIAM.
Rehearing granted for the following clarification; otherwise denied.
The decree in the original opinion is modified to read as follows:

DECREE
For the reasons stated above, the judgment of the court of appeal is reversed and the matter is remanded to the trial court to partition the pension benefits as provided by law.
REVERSED AND REMANDED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] The trial court also found that the matter had prescribed under La. C.C. art. 3497, which provides that any action for rescission of a partition of property must be brought within five years of the date of the partition or the discovery of error or fraud. The court of appeal did not address this issue. However, as Ms. Jennings is not seeking a rescission of the "Community Property Partition," La. C.C. art. 3497 does not apply. See Rasbury v. Baudier, 370 So.2d 659 (La.App. 4 Cir.1979). Thus, the trial court's ruling on this issue was erroneous.