487 So.2d 140 (1986)
Alfred B. CHRISMAN
v.
Shirley M. CHRISMAN.
No. CA-4031.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1986.
Rehearings Denied May 15, 1986.
Harry R. Cabral, Jr., H. Craig Cabral, Cabral & Cabral, Metairie, for Alfred B. Chrisman, plaintiff-appellant.
James E. Shields, Gretna, for Shirley M. Chrisman, defendant-appellee.
Before GULOTTA, KLEES, BYRNES, LOBRANO and WARD, JJ.
BYRNES, Judge.
By this appeal, Alfred B. Chrisman seeks reversal of a judgment ordering him to pay his ex-wife one half of his past, present and future military retirement benefits. We reverse.
Mr. Chrisman joined the Navy in 1946 and married appellee in 1954. He retired from the Navy in August 1976 and obtained a divorce in September. Six months later, in March 1977, the parties entered *141 into a voluntary partition of the community which had formerly existed between them. Four and one half years later in September 1981, Mrs. Chrisman filed a pleading styled "Petition for Partition of Remaining Property". In that petition Mrs. Chrisman alleged that her ex-husband's military retirement benefits were a community asset which had not been included in the earlier partition. Mr. Chrisman argued that his ex-wife had waived her rights to his retirement benefits in the 1977 partition.
Clause H of that agreement provides:

Alfred B. Chrisman hereby waives any and all other rights that she has or may have against the community existing between Shirley Martin Chrisman and Alfred B. Chrisman. (emphasis added)
This clause, which contains an obvious typographical error, is ambiguous and could be read as a waiver of either party's rights. In interpreting this clause of the agreement we are guided by several principles of contract law. The first of these is that an ambiguous contract is generally construed against the party who prepared it. C.C. Art. 2057 (formerly Art.1958), Aguillard's Enterprises Inc. v. Smith, 439 So.2d 1158 (La.App. 4th Cir.1983). The second is that where the intent of the parties to a contract is doubtful, the manner in which it has been executed by them can supply a rule for its interpretation. C.C. Art. 2053 (see former Art. 1956), John Bailey Contractor, Inc. v. State Through Department of Transportation and Development, 439 So.2d 1055 (La.1983). Finally, courts should seek to determine the true intent of the parties, and in doing so should view the contract as a whole and not just the ambiguous clauses. C.C. Art. 2055 (formerly Art. 1955), Wilson Warehouse Co. of Texas Inc. v. Maryland Casualty Co., 269 So.2d 562 (La.App. 1st Cir.1972).
In this case, we are presented with a contract which clearly was intended to be a partition of community property. It is also clear that Clause H was intended to make this partition complete and final by providing for a blanket waiver of "... any and all other rights ... against the community...." Although an error in the preparation of the agreement makes it unclear which party was waiving his or her rights, there is absolutely no doubt that the intent of the parties was that a waiver take place.
The 1977 partition was prepared by an attorney-notary in the law firm which represented Mrs. Chrisman at that time. Thus, the ambiguity in the meaning of Clause H is attributable to Mrs. Chrisman and should be construed against her. We are reinforced in this conclusion by the conduct of the parties, which has been consistent with our belief that Mrs. Chrisman was aware of her right to share in Mr. Chrisman's retirement benefits but chose to waive that right when the community property was partitioned in 1977.
Mr. Chrisman retired in 1976 so both parties were aware of the retirement benefits at the time they negotiated the partition in March 1977. By that time, it was also clear that Louisiana courts would classify military retirement benefits as a community asset. See Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975). The answer and reconventional demand which Mrs. Chrisman filed in response to her husband's suit for divorce shows that she was aware of her right to treat his retirement benefits as community property. This pleading, filed some seven months before the partition, specifically alleged in Paragraph V that:

Community property, including a home at 2176 Guardian Avenue, Gretna, Louisiana, retirement rights, privileges and payments which have been acquired during the marriage. (emphasis added)
The petition went on the request an injunction, restraining Mr. Chrisman from disposing of any of this property.
Thus, by her own pleadings, Mrs. Chrisman has admitted that she knew her exhusband's retirement benefits were community property before the divorce and subsequent property partition. In spite of this knowledge, Mrs. Chrisman treated her ex-husband's retirement as his separate *142 property to obtain alimony on two separate occasions.
The 1976 judgment of divorce awarded Mrs. Chrisman $500/month in alimony. At that time, Mr. Chrisman's income consisted almost entirely of his retirement benefits. Five years later, Mrs. Chrisman sought an increase in alimony based in part on an increase in Mr. Chrisman's retirement income due to cost of living increases. These two alimony awards, one before the partition and one after, are further evidence that Mrs. Chrisman was willing to treat her ex-husband's retirement benefits as his separate property.
In short, Mrs. Chrisman's conduct before and after the partition leads us to believe that she intended to waive her right to claim the retirement benefits as community property. Having reached this conclusion, we reverse the judgment of the trial court. Costs of this appeal are to be borne by appellee.
REVERSED.
KLEES and LOBRANO, JJ., concur.
GULOTTA, J., dissents with reasons.
LOBRANO, Judge, concurring.
I concur with the result reached by the majority for the following reasons.
I first note that there is no testimony in the record concerning the intent of the parties at the time their community property was partitioned, that is, March 24, 1977. However, based on what is before me I conclude that Mrs. Chrisman was well aware of the existence of Mr. Chrisman's military retirement at the time the settlement was perfected. Her answer and reconventional demand filed August 24, 1976 specifically mentions the military retirement as being part of the community. In that pleading she sought and obtained a restraining order prohibiting Mr. Chrisman from disposing of same prior to partition. Furthermore, the settlement itself is decidedly in favor of Mrs. Chrisman even though it is silent as to the retirement benefits. Therefore, I am convinced Mrs. Chrisman was aware of the military pension at that time.
On March 24, 1977 there was jurisprudence in Louisiana recognizing military retirement benefits as community assets. Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir.1977); Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975). It wasn't until Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) decided by the Supreme Court in 1979 that it could be argued that military pension benefits are not to be included as a community asset.[1] Of course, McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) decided June 26, 1981 settled the issue holding that military pension benefits were not subject to community property laws. It wasn't until February 1, 1983, the effective date of 10 U.S.C. § 1408, did Congress legislatively overrule McCarty. That act recognized the community status of military retirement benefits in those states where applicable, but subject to certain restrictions, i.e. disposable portion, etc.
Mrs. Chrisman argues that Moreau v. Moreau, 457 So.2d 1285 (La.App. 3rd Cir. 1984) clearly supports the trial court's finding that she did not waive her rights to the military pension. However, that case is distinguishable because the evidence there showed that at the time the settlement was agreed upon, both parties were under the impression that the McCarty decision was controlling. This was in fact a correct assumption since the settlement was March 9, 1982, subsequent to McCarty and prior to the effective date of 10 U.S.C. § 1408. Hence, there could be no waiver by the wife of something she was not legally entitled to at the time.
In Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir.1977), also cited by Mrs. Chrisman, the community agreement was entered into in September, 1974. The agreement was silent as to retirement benefits, and there was no evidence as to the intent of the *143 parties. The Court concluded that there was a "mere omission" within the meaning of Civil Code Article 1401. The Court reformed the community settlement to include retirement benefits. We point out that at the time of the settlement in that case there was no Louisiana jurisprudence recognizing military retirement as community property. Swope v. Mitchell, supra, was not decided until December 24, 1975. Therefore, it is understandable that the parties in Moon would have ignored the military retirement since Louisiana law at that time was silent on the issue.
In Rasbury v. Baudier, 410 So.2d 262 (La.App. 4th Cir.1982) this court held that the parties were aware of the military benefits at the time of their community settlement. The court concluded that there was ample evidence to support the trial judge's finding "... that the military retirement pension was discussed and omitted from the act of partition for a specific reason rather than an oversight." Id. at 263.
Despite the fact that the waiver clause of the Chrismans' community settlement is somewhat ambiguous because of an apparent typographical error, I conclude that Mrs. Chrisman waived her right to participate in the military retirement benefits. Clearly, she was aware of the benefits on March 24, 1977, and there existed jurisprudence in Louisiana which recognized those benefits as community. Those factors, along with the settlement itself which was decidedly in favor of Mrs. Chrisman, provide ample support for my conclusion.
KLEES, Judge, concurring.
I concur for the reasons assigned by LOBRANO, J.
GULOTTA, Judge, dissenting with reasons.
I respectfully dissent. The rationale of the majority opinion is that Shirley Chrisman waived entitlement to military retirement benefits in the community property settlement. The trial judge concluded that "the settlement was silent as to the military retirement benefits." The provision in the partition, which forms the basis for the wife's waiver, is as follows:
"Alfred B. Chrisman hereby waives any and all other rights that she has or may have against the community existing between Shirley Martin Chrisman and Alfred B. Chrisman."
Despite the answer in the reconventional demand, in which the wife recognizes that the retirement benefit is community property and that she was aware of the existence of the pension, I am of the opinion that the waiver provision is contradictory, unclear and ambiguous. Furthermore, the transcript of the testimony does not provide any insight nor afford any help in the determination of the intention of the parties at the time of the waiver.
Under these circumstances, I cannot conclude that the wife clearly intended to waive her right to the retirement benefit and did so in the partition agreement.
NOTES
[1] Hisquierdo, supra, dealt with the Railroad Retirement Act. However, the analogy to military retirement would have been a persuasive argument.