698 So.2d 953 (1997)
Audrey Desormeaux BRIGNAC, PlaintiffAppellee,
v.
Ray BRIGNAC, DefendantAppellant.
No. 96-1702.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1997.
Rehearing Denied September 30, 1997.
Gregory P. Hardy, St. Martinville, for Audrey Desormeaux Brignac.
Alex Andrew Lopresto, III, Lafayette, for Ray Brignac.
Before COOKS, PETERS and SULLIVAN, JJ.
*954 PETERS, Judge.
The plaintiff, Audrey Desormeaux Brignac, brought this suit to be declared the owner of a part of her former husband's retirement benefits. The defendant, Ray Brignac, contends that this ownership issue was previously resolved by a community property settlement agreement entered into after he and Ms. Brignac divorced. The trial court rendered judgment in favor of the plaintiff, and Mr. Brignac has appealed.

DISCUSSION OF THE RECORD
On January 1, 1950, Ray Brignac began employment with the State of Louisiana, Department of Agriculture, as a marketing specialist. As a state employee, Mr. Brignac became enrolled in and contributed to the Louisiana State Employees Retirement System (LASERS). On December 15, 1958, Mr. Brignac terminated his employment with the state and withdrew the funds in his LASERS account. On March 28, 1972, Mr. Brignac married the plaintiff, Audrey Desormeaux. Mr. Brignac returned to state employment on September 1, 1972, as the Assistant Director of the Louisiana Department of Public Works.
In September 1976, Mr. Brignac exercised his right to repurchase his prior years of state employment in the LASERS program. This process is called a repayment of refunded member contributions. By repaying the amount refunded plus interest, Mr. Brignac received credit under the LASERS program for his previous nine years of state employment. Mr. Brignac testified that he used his separate funds, not community assets, to repurchase these years of service. According to Mr. Brignac, he inherited sufficient funds to start and maintain a small real estate business, and he used $3,001.00 from that business to complete the transaction, even though the checks repurchasing the credit were written on a community account. Mr. Brignac testified that LASERS would not accept a business account check so it was necessary for him to deposit funds into a community joint checking account and write personal checks to the state agency. In support of his testimony, he introduced into evidence the bank statement from the community checking account, reflecting a deposit of $3,940.00 on September 29, 1976. He also produced the two checks written off of that account to LASERS on September 30, 1976. One was written for $2,600.00 and the other for $401.00. Mr. Brignac explained that the first check represented the refund that he had received in 1958 from the LASERS program and the second check represented the accumulated interest required to repurchase the time in the LASERS program.[1]
On May 1, 1979, Mr. Brignac became the Administrator and Executive Director of the Teche-Vermilion Fresh Water District. Mr. Brignac remained in this position until his retirement in February 1995. Retirement benefits in this new position were covered by the Parochial Employees Retirement System (PERS), not by LASERS. Mr. Brignac transferred his years of service under the LASERS program into the PERS program. At the time of the transfer, he had accumulated 15.9 years of service in the LASERS program. However, due to differences in the funding of the programs, Mr. Brignac could only receive credit for 11.448 years of service in the PERS program, unless he chose to pay the difference between the plans.[2] Mr. Brignac opted to only receive 11.448 years of service rather than pay the difference.
On February 9, 1981, the community property regime existing between Mr. and Ms. Brignac was terminated as a result of Mr. Brignac filing a petition for divorce. The parties were divorced on March 5, 1982, and on March 12, 1982, they entered into a community property settlement consisting of two separate documents. One of the documents is entitled "COMMUNITY PROPERTY SETTLEMENT" and is recorded in the conveyance records of St. Martin Parish.[3] In *955 that agreement, Ms. Brignac received 1.771 acres, which included the family home; an automobile; and all movable property in her possession. Mr. Brignac received certain listed movable property, and Ms. Brignac gave him an equalizing promissory note in the amount of $42,000.00 due and payable on or before September 1, 1982. The agreement provides "that [the parties] desire to settle and liquidate community property existing between them and that they have agreed to settle same." It further provides that:
[T]he parties hereto discharge each other from any further accounting to the community which formerly existed between them the same being fully liquidated as above set forth.
The second document is entitled "COMMUNITY PROPERTY SETTLEMENT AND SIDE AGREEMENT" and was not filed into the public records. This agreement acknowledged the existence of the recorded agreement, explained certain aspects of that agreement, and imposed other obligations on both parties. Of particular importance to this litigation is the following language:
It is further agreed and stipulated that by execution of this community property settlement, AUDREY DESORMEAUX will drop all suits before the Courts and will not pursue any further litigation against RAY BRIGNAC resulting from the marriage between them or claim alimony hereafter.
At trial on the current suit, Ms. Brignac acknowledged that when the 1982 settlement was consummated, she had suits pending addressing community property issues and ownership of Mr. Brignac's business interests.[4] Over ten years later, on February 9, 1994, Ms. Brignac filed this petition for partition of community property and settlement of claims, alleging that the original partition had not addressed Mr. Brignac's pension plan and that she was entitled to a portion of such benefits.
In February 1995, Mr. Brignac retired with 28.91 years of creditable service and began to receive $3,510.10 per month in retirement benefits. He could have received a maximum monthly retirement benefit of $4,344.29, but because he had remarried, he chose the option whereby he would receive less per month, but his wife would receive fifty percent of his monthly benefit in the event that he predeceased her.
Following a hearing, the trial court rendered judgment awarding Ms. Brignac $803.16 a month from Mr. Brignac's retirement benefits. In calculating Ms. Brignac's portion under the Sims formula, the trial court calculated 13.23 years of the total creditable service as arising during the community regime despite the fact that the parties were only married for approximately ten years. The extra time was awarded to Ms. Brignac because the trial court concluded that Ms. Brignac was entitled to credit for the years of service that Mr. Brignac had repurchased during the existence of the community property regime.[5] Mr. Brignac has appealed, asserting two assignments of error. These assignments can be reduced to two questions, namely, (1) is Ms. Brignac entitled to a portion of Mr. Brignac's retirement benefits and (2) if she is, how should that portion be calculated? We find that the trial court erred in awarding Ms. Brignac any portion of Mr. Brignac's retirement benefits and therefore, need not address the second issue.

OPINION
By his first assignment of error, Mr. Brignac argues that Ms. Brignac executed a valid, *956 voluntary transaction or compromise which relinquished any rights that she might have had to his retirement benefits.
La.Civ.Code art. 3071 defines a transaction or compromise as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
The compromise instrument is the law between the parties, and it must be interpreted according to the true intent of the parties. Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741. Additionally, the compromise instrument is governed by the same rules of construction that apply to contracts. Id. Under the rules of contract interpretation, any ambiguity in a contract is construed against the one who drafted the contract. La.Civ.Code art. 2056. Additionally, where the intent of the parties to a contract is doubtful, the manner in which it has been executed by them can supply a rule for its interpretation. La.Civ.Code art. 2053.
Compromise agreements made in an effort to avoid litigation are favored by the law, and courts will not declare a settlement void without a clear showing that it violates good morals or the public interest. Herrington v. Skinner, 93-1556 (La.App. 3 Cir. 6/1/94); 640 So.2d 748 [quoting Walton v. Walton, 597 So.2d 479, 484 (La.App. 1 Cir.1992) ]. In the absence of bad faith, error, or fraud, compromise agreements are not lightly invalidated. Id.
In rejecting Mr. Brignac's transaction or compromise argument, the trial court considered the holdings in Moreau v. Moreau, 457 So.2d 1285 (La.App. 3 Cir.1984) and Chrisman v. Chrisman, 487 So.2d 140 (La.App. 4 Cir.1986), found them to be in conflict, and considered that he was bound by the third circuit opinion in Moreau. In fact, the trial court noted in its reasons for judgment that the Moreau case "seems to be an identical case to the one before this Court today." We disagree and do not find that the Moreau and Chrisman decisions are in conflict.
In Moreau, this court found that both parties knew of the existence of the retirement benefits at issue but that both parties thought the benefits were separate property because of prior jurisprudence. As a result of this misunderstanding, this court allowed the spouse to later seek relief from the prior settlement. In Chrisman, the wife also knew of her husband's retirement benefits but was not under the impression that they were his separate property because the law had been clarified on this issue. As a result, the fourth circuit concluded that she could not maintain an action to modify the prior agreement.
In the present case, the testimony was uncontradicted that both parties were aware of Mr. Brignac's retirement benefits. Additionally, Ms. Brignac has not contended that she believed that the retirement benefits were the separate property of Mr. Brignac at the time that they executed the community property settlement and side agreement. Thus, this case falls squarely within the parameters of Chrisman, 487 So.2d 140, and we are only left with the issue of whether the side agreement effected a valid transaction or compromise of Ms. Brignac's rights to Mr. Brignac's retirement benefits.
The language at issue is contained in the side agreement which was drafted by Ms. Brignac's law firm and executed by the parties on March 12, 1982, the same date that they executed the community property settlement. The side agreement provides in pertinent part as follows:
It is further agreed and stipulated that by execution of this community property settlement, AUDREY DESORMEAUX will drop all suits before the Courts and will not pursue any further litigation *957 against RAY BRIGNAC resulting from the marriage between them or claim alimony hereafter.
Neither the side agreement nor the community property settlement mentions Mr. Brignac's retirement benefits. However, Ms. Brignac admitted on direct examination and on cross-examination in this matter that she had always been aware that Mr. Brignac had a retirement plan. She even testified as to the circumstances surrounding his repayment of the refunded contributions in 1976. At no time, does Ms. Brignac contend that she was under the false impression that the plan was Mr. Brignac's separate property. Although it is not explicitly spelled out that Ms. Brignac was waiving any rights that she had to Mr. Brignac's retirement benefits, any ambiguity in a contract is to be construed against the party who drafted the contract. In this case, Ms. Brignac's attorney at the time of her divorce drafted both the community property settlement and the side agreement, and thus, any ambiguity contained in the side agreement will be construed against her. We conclude that the side agreement effected a valid compromise and Ms. Brignac waived any right that she may have had to a portion of Mr. Brignac's retirement benefits.

DISPOSITION
For the foregoing reasons, the decision of the trial court is reversed and all costs of this appeal are assessed to the plaintiff, Audrey Desormeaux Brignac.
REVERSED.
COOKS, J., concurs in part and dissents in part with written reasons.
COOKS, Judge, concurring in part and dissenting in part.
I agree with the majority that the trial judge's "credible service" calculation was incorrect. The judge erred in factoring the credits repurchased by Mr. Brignac for the years he was employed prior to the marriage. However, I do not agree (as the majority holds) that Mrs. Brignac is not entitled to share any portion of Mr. Brignac's retirement benefits because of the language contained in the Community Property Settlement and Side Agreement executed by the parties. Though the documents appear all encompassing on first reading, neither the Community Property Settlement nor the Side Agreement reflects clearly and unequivocally that Mrs. Brignac knew she had a right to claim a portion of her husband's retirement benefits and knowingly abandoned this right. I believe the facts of this case are not materially distinguishable from those presented in Moreau v. Moreau, 457 So.2d 1285 (La.App. 3 Cir.1984). The majority notes Mrs. Brignac did not contend she believed Mr. Brignac's retirement benefits were separate property. They failed to mention Mrs. Brignac did assert, during oral argument that she did not realize she possessed any right at all to claim such benefits at the time the community was partitioned. The jurisprudence, as she urged, was in a state of flux and uncertainties prevailed as to the extent and nature of a spouse's right to share retirement benefits earned by the other partner during the existence of the marriage.
In Moreau, this Court held the parties' mistaken belief at the time they executed a community property settlement that retirement benefits were separate property constituted a vice sufficient to negate their consent to fully partition the community property assets existing between. We reasoned the parties misunderstanding was reasonable in light of prior conflicting and confusing jurisprudence. Moreau was decided in 1984. Mr. and Mrs. Brignac's community property regime terminated in 1981 and the Community Property Settlement and Side Agreement were executed by the Brignacs in 1982. The same jurisprudence which the parties mistakenly relied on in Moreau, Mrs. Brignac argues caused her to believe she was not entitled to assert any claim to share her husband's retirement benefits.
For the same reasons articulated in Moreau, I believe the documents executed by Mrs. Brignac are insufficient to defeat her present claim to share a portion of Mr. Brignac's retirement benefits earned during the existence of the community regime. Neither document specifically indicates that Mrs. Brignac knew she had a right to claim such *958 benefits and knowingly abandoned this right. Without evidence that she intelligently relinquished her claim, the documents should not operate to prevent her from pursuing it at this time.
NOTES
[1] No testimony was presented as to why the amount of the checks does not equal the amount that Mr. Brignac deposited into his joint checking account.
[2] Mr. Brignac would have been required to pay $47,063.89 into the PERS program in order to make up the deficit.
[3] Although this document is dated March 12, 1982, and contains a stamp of the clerk's office suggesting that it was "RECEIVED AND FILED" on March 16, 1982, another notation on the document reflects that it was not recorded in the conveyance records until July 27, 1982.
[4] The prior litigation was not introduced, and it is not clear whether both the community and business assets issues were addressed in one suit or several. One of the exhibits also mentions dismissal of a perjury charge which was being pursued against Mr. Brignac. However, Ms. Brignac testified that she was aware that Mr. Brignac's primary goal in entering into the community property settlement was to protect his business interests and to terminate all litigation.
[5] Mr. Brignac had repurchased nine years of service, but he lost some of his years of service when he transferred programs. It appears that the trial court subtracted the entire 4.452 years of service that Mr. Brignac lost when he transferred from the LASERS program to the PERS program from the portion attributable to years of service during the community.